## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MAXWELL LORINCZ, et al.,

               Plaintiffs,           CASE NO. 16-12290
                                        HON. DENISE PAGE HOOD

v.

COLONEL KRISTE KIBBEY
ETUE, et al.,

               Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#9]
## and
## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#10]

## I. BACKGROUND/FACTS

On June 21, 2016, Plaintiffs Maxwell Lorincz ("Lorincz"), Jason Poe ("Poe"), Earl Cantrell Carruthers ("Carruthers"), and Brandon Shobe ("Shobe"), individually and on behalf of a class of all others similarly situated, filed a Complaint against Defendants Colonel Kriste Kibbey Etue in her official capacity as the Director of the Michigan State Police, and Inspector Scott Marier in his official capacity as the Interim Director of the Michigan State Police Forensic Science Division (collectively "State Defendants"); and against Captain Joe Quisenberry in his official capacity as Commanding Officer of the Forensic Services Laboratory for Oakland County, and Michael Bouchard in his official

1

capacity as Sheriff of Oakland County (collectively "County Defendants").  (Doc # 1)   The class action Complaint alleges Due Process and Fourth Amendment violations pursuant to 42 U.S.C. §§ 1983 and 1988, and seeks only declaratory and injunctive relief.  *Id.*  Plaintiffs do not seek damages.  Specifically, Plaintiffs seek: (a) class certification;   (b) a declaratory judgment that Defendants' policy of reporting oils and edibles containing THC as "Scheduled 1 THC" when two or more naturally occurring cannabinoids other than THC are also found in the sample violates Plaintiffs' and class members' constitutional rights;   (c) a declaratory judgment that Defendants' failure to note in laboratory reports analyzing oils and edibles that naturally occurring cannabinoids other than THC were found violates Plaintiffs' and class members' constitutional rights;   (d) an injunction enjoining Defendants from issuing laboratory reports in the future contrary to the declaratory relief sought;   (e) an order requiring Defendants to amend existing laboratory reports in pending criminal cases to conform with the declaratory relief sought;   (f) the appointment of a crime lab monitor to assure compliance with the injunctive relief sought;   and (g) attorney's fees and costs.  *Id.* at 23-24.

On August 5, 2016, County Defendants filed a Motion to Dismiss.  (Doc # 9)  Also on August 5, 2016, State Defendants filed a Motion to Dismiss.  (Doc # 10)   Plaintiffs filed a Response on September 2, 2016.   (Doc # 15)   State

Defendants and County Defendants each filed a Reply on September 30, 2016. (Doc # 17; Doc # 18)  On October 13, 2016,  State Defendants filed an Errata. (Doc # 19)  Plaintiffs filed a Supplemental Response on October 27, 2016.  (Doc # 21)  The Court held a Motion Hearing on November 2, 2016.  On November 15, 2016, the parties filed a Joint Clarification on House Bill No. 5649.  (Doc # 22) For the reasons set forth below, the Court grants County Defendants' Motion to Dismiss as well as State Defendants' Motion to Dismiss.

Plaintiffs and the proposed class are all licensed medical marijuana patients and/or caregivers in Michigan who use marijuana oils and edibles, and allegedly possess such items at almost all times.  There are approximately 180,000 registered medical marijuana patients, and approximately 33,000 registered medical marijuana caregivers in Michigan.  (Doc # 1, Pg ID 21)  State Defendants and County Defendants comprise all public forensic law enforcement laboratories in Michigan handling the analysis of marijuana-based oils and edibles.  Plaintiffs allege a serious risk of violation of their substantive and procedural due process rights, as well as their Fourth Amendment rights arising out of State and County Defendants' policies and practices of identifying marijuana-based oils and edibles as Schedule 1 THC, instead of as marijuana, whenever the samples do not contain visible plant matter.  Plaintiffs claim that State and County Defendants intentionally misrepresent test results regarding marijuana-based oils and edibles,

at the behest of the Prosecuting Attorneys Association of Michigan and other law enforcement agencies, to manufacture probable cause to charge felonies when no felonies occur.

The marijuana plant contains various naturally occurring cannabinoids, which are also present in marijuana-based oils and edibles. Delta-9-Tetrahydrocannabinol, known as "THC," is one such cannabinoid, and is the chemical primarily responsible for the psychoactive effects of marijuana. Under the Michigan Controlled Substances Act ("MCSA"), THC (whether synthetic or plant-based) is a Schedule 1 controlled substance. *See* MCL § 333.7212. Schedule 1 includes synthetic THC and "Marihuana, including pharmaceutical-grade cannabis," except that "Marihuana, including pharmaceutical-grade cannabis, is a schedule 2 controlled substance if it is manufactured, obtained, stored, dispensed, possessed, grown, or disposed of in compliance with this act and as authorized by federal authority." *Id.* At the time of the filing of the Complaint, under Michigan law, possession of synthetic THC could be punishable as a felony, while possession of plant-based THC could be charged as a misdemeanor. However, following a recent change in Michigan law, the felony distinction between plant-based THC and synthetic THC has been eliminated. *See* House Bill No. 5649 (amending MCL § 333.7403(2)(d)) (Doc # 19-2, Pg ID 358-60); House Bill No. 5650 (amending MCL § 333.7404(2)(d)) (Doc # 19-2, Pg ID 361-62). Under

House Bills No. 5649 and 5650, signed into law on October 6, 2016, possession of either plant-based THC or synthetic THC could be charged as a misdemeanor.

Plaintiffs maintain that the recent change in Michigan law does not render their request for declaratory and injunctive relief moot. Plaintiffs argue that, regardless of the new amendments, an injustice continues to be caused by Defendants' reporting policies and practices because medical marijuana patients and caregivers can be deprived of their immunity under the Michigan Medical Marihuana Act ("MMMA") when marijuana-based oils or edibles are identified as Schedule 1 THC, rather than as marijuana, since the MMMA protects possession of marijuana but does not protect possession of synthetic THC. Whereas if Defendants more specifically identified a sample as "marijuana," no probable cause for a crime would exist, and immunity under the MMMA would be protected.

"[T]he MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use is carried out in accordance with the provisions of the MMMA." *People v. Carruthers*, 301 Mich. App. 590, 597 (2013) (internal quotations omitted). The MMMA defines "marihuana" by reference to the public health code, which in turn defines "marihuana" as:

> all parts of the plant Cannabis sativa L., growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every

5

> compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any sterilized seed of the plant that is incapable of germination. Marihuana does not include industrial hemp grown or cultivated, or both, for research purposes under the industrial hemp research act.

MCL § 333.7106.  House Bill No. 4210, approved by the Governor on September 21, 2016, amends the MMMA definition of "usable marihuana" to mean "the dried leaves, flowers, plant resin, or extract of the marihuana plant, but does not include the seeds, stalks, and roots of the plant."  *See* House Bill No. 4210 (amending MCL §§ 333.26423, 333.26424) (Doc # 21-1, Pg ID 372).  The amended MMMA makes clear that medical marijuana patients and caregivers who use marijuana-based oils and edibles in accordance with the MMMA have immunity from arrest and prosecution, not just an affirmative defense to a charge of possession.  The MMMA also provides that:

> (e) There is a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the qualifying patient or primary caregiver complies with both of the following:
> (1) Is in possession of a registry identification card.
> (2) Is in possession of an amount of marihuana that does not exceed the amount allowed under this act.  The presumption may be rebutted by evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with debilitating medical conditions, in accordance with this act.

*Id.* at 373.

Where there is no visible plant matter, County Defendants currently report that a sample of an oil or edible that contains THC contains "delta-9-tetrahydrocannabinol (Δ-9-THC), Schedule 1." (Doc # 9-2)  Where there is no visible plant matter, State Defendants currently report that a sample of an oil or edible that contains THC contains "delta-1-tetrahydrocannabinol (origin unknown)" or "delta-1-tetrahydrocannabinol . . . from a plant (marihuana) or a synthetic source." (Doc # 1-1, Pg ID 27; Doc # 10-5, Pg ID 196-98)  Plaintiffs do not dispute that the samples tested in connection with their cases contained THC. Plaintiffs concede that "THC has the same chemical composition whether synthetic or naturally occurring in a marijuana plant." (Doc # 1, Pg ID 3)  Plaintiffs acknowledge that naturally occurring cannabinoids could be synthesized and added to a sample. (Doc # 1, Pg ID 18)  It is undisputed that Plaintiffs have access to the underlying laboratory testing data via a Freedom of Information Act Request. (Doc # 1, Pg ID 20-21)

Nevertheless, Plaintiffs contend that where two or more naturally occurring cannabinoids other than THC are also found in an oil or edible sample, the failure of State and County Defendants to note in the laboratory reports that naturally occurring cannabinoids other than THC were found violates Plaintiffs' rights. Plaintiffs assert that State and County Defendants have a legal duty to test for and

report to criminal defendants the presence of naturally occurring cannabinoids. Plaintiffs attach Affidavits from two experts acknowledging that it is possible that THC could have a synthetic source, but claiming that it stretches credulity to speculate that someone would go to all the trouble to manufacture synthetic THC, which is difficult and expensive, when it is so easily extracted from the plant. (Doc # 1-1, Pg ID 36-38; Doc # 15-1, Pg ID 243-48)  The Affidavits also explain that the current testing methods virtually always identify other cannabinoids, which makes the natural origin of the THC virtually certain, and the possibility of synthetic origin becomes unwarranted speculation.  One expert explains that the presence of a non-psychoactive compound in the sample is probative of plant origin because there would be no motive for synthesizing those compounds.  (Doc # 1-1, Pg ID 37)

Turning to the named Plaintiffs, Lorincz, Poe, and Shobe bring claims against State Defendants.  Carruthers brings claims against County Defendants. Their alleged harm is the *potential* to be charged with, arrested/detained/prosecuted for, or subjected to forfeitures or coerced into guilty pleas in connection with an offense related to possession of *synthetic* THC, not protected under the MMMA, based *solely* on lab reports generated by State and County Defendants that allegedly falsely report Schedule 1 THC when testing samples of oils and edibles that are marijuana-based.

Lorincz is a registered medical marijuana patient in Michigan, and the only named Plaintiff to have ever been charged with possession of synthetic THC. (Doc # 1, Pg ID 7) Lorincz was in possession of a "black/brown tar-ish residue" that appeared to be hash oil, which was confiscated and sent to State Defendants for testing. *Id.* The lab report generated by State Defendants identified the substance as "delta-1-tetrahydrocannabinol (origin unknown)." (Doc # 10-5, Pg ID 198) Lorincz was initially charged with a misdemeanor for possession of marijuana. Because Lorincz refused to enter a guilty plea, the prosecutor later decided to charge Lorincz with a felony for possession of synthetic THC. (Doc # 1, Pg ID 7) Lorincz requested and obtained the underlying laboratory testing data and engaged an expert to perform his own analysis of the evidence. (Doc # 1, Pg ID 21) A scientist employed by State Defendants testified in Lorincz's criminal proceedings that he was not able to tell which pathway, plant or synthetic, led to the THC he identified. (Doc # 1, Pg ID 8) The felony charge against Lorincz was dismissed because the lab report did not show evidence of synthetic THC. *Id.*

Poe was arrested and charged with possession of marijuana. (Doc # 1, Pg ID 12) The lab report generated by State Defendants identified one substance as "Other" with the presence of THC "detected, but not confirmed," and it identified a second substance as "Marihuana." (Doc # 10-5, Pg ID197) All charges against

Poe were dropped, and he was never charged with possession of synthetic THC. (Doc # 1, Pg ID 12)

Shobe was arrested and charged with possession of marijuana. (Doc # 1, Pg ID 12) The lab report generated by State Defendants identified one substance as "Marihuana," and it identified a second substance as "delta-1-tetrahydrocannabinol" "from a plant (marihuana) or a synthetic source." (Doc # 10-5, Pg ID 196) Shobe has never been charged with possession of synthetic THC.

Carruthers is a registered medical marijuana patient and caregiver in Michigan. (Doc # 1, Pg ID 13) Carruthers was charged with possession with intent to deliver marijuana, a four-year felony, and driving with a suspended license. *Id.* at 12-13; Doc # 9-1, Pg ID 110; *see* MCL 333.7401(2)(d)(iii). He had various edibles in his vehicle which were sent to County Defendants for testing. *Id.* at 13. The lab report generated by County Defendants identified some substances as "Marihuana, Schedule 1" and some substances as "delta-9-tetrahydrocannabinol (Δ-9-THC), Schedule 1." (Doc # 9-2) Carruthers was convicted by a jury of Possession With Intent to Distribute Marijuana. (Doc # 1, Pg ID 13) He appealed that conviction to Michigan's Court of Appeals. The Court of Appeals remanded the case back to the trial court for an evidentiary hearing to determine if Carruthers was entitled to assert a "Section 8" affirmative defense asserting the medical purpose for using marijuana. *Id.* Following a Section 8

10

hearing, Carruther's conviction was vacated so that a new trial on the Possession With Intent to Distribute Marijuana charge could be held for Carruthers to present a Section 8 defense to the jury. (Doc # 9-3, Pg ID 124) The case is now stayed pending the outcome of the prosecutor's appeal to the Michigan's Supreme Court. (Doc # 9-4, Pg ID 125) Carruthers's case has been ongoing for five years, and he has never been charged with possession of synthetic THC.

## II. ANALYSIS

### A. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff

must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## B. Standing

State and County Defendants argue that this Court lacks subject matter jurisdiction because Plaintiffs lack standing to bring this action. They facially attack Plaintiffs' pleadings, so the Court takes the allegations in the Complaint as true and construes them in the light most favorable to Plaintiffs. *See RMI Titanium Co.*, 78 F.3d at 1134.

State Defendants argue that Plaintiffs do not have standing to bring this class action for injunctive and declaratory relief because the criminal charges against Lorincz and Poe were admittedly dismissed, and a felony charge or charge related to synthetic THC was never filed against Shobe. State Defendants further argue that they are not involved in the decision regarding what charge to file. Sate Defendants argue that no current controversy or actual or imminent harm exists

13

here, and that Plaintiffs cannot establish a substantial likelihood that they will be charged with an offense related to synthetic THC.  State Defendants maintain that the threat of repeated injury here is speculative and tenuous.  State Defendants assert that the fact that Plaintiffs are requesting class action relief or challenging a government practice is irrelevant to the standing determination in this case.

County Defendants argue that Carruthers does not have standing to bring this class action for injunctive and declaratory relief because he has never been charged with possession of synthetic THC.  County Defendants further argue that the alleged harm is speculative at best and not fairly traceable to County Defendants because it is the prosecutor who decides what charge to file, and this case does not involve the falsifying or withholding of evidence.

Plaintiffs argue that Plaintiffs and the proposed class have standing to bring this action for injunctive and declaratory relief because they are at a significant and realistic risk of having the marijuana-based oils and edibles always in their possession confiscated and sent to State and County Defendants' laboratories where, because of Defendants' stated policies and uniform practices, the samples would be labeled as containing "Schedule 1 THC," rather than "marijuana."

Standing is a jurisdictional matter and is a threshold question to be resolved by the court before the court may address any substantive issues.  *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987).  "The

14

federal courts are not free-range problem solvers" and are not at liberty to issue advisory opinions. *Hearring v. Silwowski*, 806 F.3d 864, 868 (6th Cir. 2015). Article III of the United States Constitution limits the federal courts' jurisdiction to cases and controversies. U.S. CONST. art. III, § 2. In *Lujan v. Defenders of Wildlife*, the United States Supreme Court set forth three elements to establish standing: (1) that plaintiffs suffered an injury in fact, which is both concrete and actual or imminent; (2) that the injury is caused by defendants' conduct, and is not the result of the independent action of some third party not before the court; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. 504 U.S. 555, 560-61 (1992). "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).

To establish standing for declaratory or injunctive relief, "[a]bstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotations omitted); *see Grendell v. Ohio Supreme Court*, 252

F.3d 828, 832 (6th Cir. 2001). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). If a plaintiff "has made no showing that he is realistically threatened by repetition of his experience . . . , then he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Lyons*, 461 U.S. at 109.

In this case, taking the allegations in the Complaint as true, not one of the named Plaintiffs can be said to be immediately in danger of sustaining a legally cognizable injury sufficient to confer standing. Their alleged harm is the *potential* to be charged with, arrested/detained/prosecuted for, or subjected to forfeitures or coerced into guilty pleas in connection with an offense related to possession of *synthetic* THC, not protected under the MMMA, based *solely* on lab reports generated by State and County Defendants that allegedly falsely report Schedule 1 THC when testing samples of oils and edibles that are marijuana-based. However, only one named Plaintiff has ever been charged with an offense related to synthetic THC, and the Complaint does not allege that this was based solely on the lab reports generated by State and County Defendants.[1] Poe was arrested for and

---

[1] Plaintiffs rely primarily on *Ramirez v. Webb*, 787 F.2d 592 (6th Cir. 1986) (unpublished); however, the Court finds that *Ramirez* does not control in this case. The *Ramirez* case involved a preliminary

charged with possession of marijuana, and all charges against him were dropped. He has never been charged with possession of synthetic THC.  Shobe was arrested for and charged with possession of marijuana, and he has never been charged with possession of synthetic THC.  Carruthers was charged with possession with intent to deliver marijuana, a four-year felony.  His case has been ongoing for five years, and he has never been charged with possession of synthetic THC.  Lorincz was originally charged with possession of marijuana.  The Complaint alleges that because Lorincz refused to enter a guilty plea, the prosecutor later decided to charge Lorincz with a felony for possession of synthetic THC.  The lab report generated by State Defendants, Exhibit A attached to the Complaint, identified the substance as "delta-1-tetrahydrocannabinol (origin unknown)."  (Doc # 1-1, Pg ID 27)   The Complaint also states that the synthetic THC felony charge against Lorincz was dismissed precisely because the lab report was *not* evidence that Lorincz possessed synthetic THC.

---

injunction action brought by a plaintiff class consisting of all persons of Hispanic origin or appearance within the Western District of Michigan, enjoining the Immigration and Naturalization Service ("INS") from stopping vehicles occupied by plaintiff class members absent specific, articulable facts to support a reasonable suspicion that an occupant is "an illegal alien." *Id.* at *1. The record in the case contained "numerous" affidavits, and the named plaintiffs had been personally subjected to vehicular stops with no apparent reasonable articulable facts for the stops. *Ramirez v. Webb*, 599 F. Supp. 1278, 1283 (W.D. Mich. 1984).  The Sixth Circuit found that the district court was correct in distinguishing *Lyons* because the odds that some Hispanic or Hispanic-looking person may be stopped in his vehicle for no articulable reason by an INS agent were much greater.  *Ramirez*, 787 F.2d at *1.  The Sixth Circuit held that the plaintiff class was being realistically threatened by unjustifiable vehicular stops. *Id.* Unlike the named plaintiffs in *Ramirez*, the named plaintiffs in this case have not been personally subjected to the alleged harm, and the alleged harm is much more improbable than unjustifiable vehicular stops of Hispanic-looking persons by the INS.

"Standing is not an ingenious academic exercise in the conceivable . . . ." *Lujan*, 504 U.S. at 566 (internal quotations omitted).  Under these facts, the Court cannot conclude that Plaintiffs have made allegations that could establish a realistic threat that they will be deprived of their immunity under the MMMA.  Not one of the named Plaintiffs has been personally subjected to a situation in which an allegedly false lab report identifying Schedule 1 THC within a sample of a marijuana-based oil or edible has "created probable cause" for an improper charge, arrest, detention, prosecution, forfeiture, or guilty plea in connection with synthetic THC—hinting at just how unlikely this alleged threat is.[2]  As Lorincz's past experience demonstrates, such a charge would not survive precisely because it would not be supported by probable cause—it would likely be dismissed by state courts because the lab report reporting Schedule 1 THC alone creates reasonable doubt, and it alone cannot create probable cause that the THC is synthetic.

---

[2] Plaintiffs cite cases from other circuits, which are unavailing and confirm this Court's conclusion that Plaintiffs have failed to satisfy the unyielding, baseline requirements of Article III because Plaintiffs have not been personally subjected to the alleged harm.  *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998) (finding named plaintiffs had standing where they had been personally subjected to the allegedly unconstitutional interrogations and had pending delinquency proceedings); *Church v. City of Huntsville*, 30 F.3d 1332, 1339 (11th Cir. 1994) (finding named plaintiffs had standing where they had been personally subjected to the allegedly unconstitutional arrests and harassment and continued to be involuntarily homeless); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1377 (1st Cir. 1992) (finding plaintiff union did not have associational standing because no union member faced a realistic risk of being personally subjected to the allegedly unconstitutional pre-employment drug testing); *Thomas v. City of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992) (finding plaintiffs had standing where seventy five plaintiffs alleged that they were personally subjected to the allegedly unconstitutional police misconduct within a small six by seven block area, and the court found there were repeated instances of violence and retaliatory confrontations after the filing of the action).

Given the presumption under the MMMA that a registered medical marijuana patient or caregiver is engaged in the medical use of marijuana in accordance with the MMMA (and is therefore immune from arrest/prosecution/forfeiture for possession of marijuana) so long as he is in possession of a registry identification card and in possession of an allowable amount of marijuana, the Court finds it highly unlikely that Plaintiffs will be deprived of their immunity under the MMMA in the future.  For immunity to be stripped away due to the allegedly illegal practices of State and County Defendants all of the following would have to occur (which the Complaint does not allege has happened to any one of the named Plaintiffs):  (1) Plaintiff would have to be in possession of marijuana-based oils or edibles in a manner that fully complies with the MMMA; (2) Plaintiff would have to be searched by the police; (3) Police would have to find no evidence that Plaintiff is using the marijuana-based oils or edibles for something other than a purpose protected by the MMMA; (4) Despite Plaintiff displaying his registry identification card, and despite being in possession of an amount of marijuana-based oils or edibles that does not exceed the amount allowed, police would have to completely ignore the presumption afforded under the MMMA that Plaintiff is engaged in the medical use of marijuana in accordance with the MMMA—and proceed to forfeit the marijuana and/or arrest/detain Plaintiff  (The Court notes at this point Plaintiff would already be stripped of his

immunity under the MMMA before State or County Defendant laboratories even enter the picture); (5) Police would then have to send the marijuana for testing to State or County Defendants where the THC within the marijuana would be labeled as "delta-9-tetrahydrocannabinol (Δ-9-THC), Schedule 1," "delta-1-tetrahydrocannabinol (origin unknown)," or "delta-1-tetrahydrocannabinol . . . from a plant (marihuana) or a synthetic source," if the sample contains no visible plant matter  (The Court notes that Plaintiffs concede that THC has the same chemical composition whether synthetic or naturally occurring in a marijuana plant);  and (6) A prosecutor would then have to charge or threaten to charge or prosecute for possession of synthetic THC based solely on the lab report.

The last step in this chain of events leads to the second and third elements of standing.  The Court finds that the alleged harm would be the result of the independent action of some third party not before the Court, and not caused by State or County Defendants' conduct.  Assuming *arguendo* that at least one of the named Plaintiffs could establish a realistic risk of being arrested or subjected to forfeiture, it would be the independent action of the police that could potentially improperly strip him of his immunity under the MMMA.  Such action would occur before any sample is sent to State or County Defendant laboratories for testing. Likewise, assuming *arguendo* that at least one named Plaintiff could establish a realistic risk of being charged with or prosecuted for possession of synthetic THC

based solely on the lab report, it would be the independent action of the prosecutor that could potentially improperly strip him of his immunity under the MMMA.[3] Under these circumstances, the declaratory and injunctive relief sought regarding State and County Defendants' laboratory reporting practices would not be likely to redress the alleged injury.

Regarding standing to bring a class action, as the Sixth Circuit has explained,

> [t]hreshold individual standing is a prerequisite for all actions, including class actions. A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of brining a class action. . . . [O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants. Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (internal quotations and citations omitted). "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with defendants, none may seek relief on behalf of himself or the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). The Court concludes that the named Plaintiffs in this case

---

[3] "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

do not have standing to represent the proposed class because they cannot establish individual standing vis-à-vis Defendants as discussed above.

The Court concludes that Plaintiffs lack standing and do not meet the preconditions for asserting an injunctive and declaratory claim in a federal forum. The most that can be said is that taking Plaintiffs' allegations as true establishes that if marijuana-based oil or edible samples are confiscated and sent to State or County Defendants' laboratories, they will be labeled as Plaintiffs fear. However, this in and of itself cannot establish a realistic threat that Plaintiffs will be deprived of their immunity under the MMMA, or that the laboratory reports will create probable cause for an improper charge, arrest, detention, prosecution, or forfeiture related to possession of synthetic THC. Even if the named Plaintiffs were exposed to illegal conduct in the past, and even if they may bring a Section 1983 action to recover damages, they cannot show a present case or controversy regarding injunctive and declaratory relief because they cannot establish continuing present adverse effects. In short, taking the allegations in the Complaint as true, the named Plaintiffs have not established that they have personally suffered some actual or threatened injury that is immediate and concrete and fairly traceable to the alleged illegal conduct of State and County Defendants such that any potential injury will be redressed by the injunctive and declaratory relief sought. Accordingly, the

Court grants County Defendants' Motion to Dismiss as well as State Defendants'
Motion to Dismiss.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants Captain Joe Quisenberry and
Sheriff Michael Bouchard's Motion to Dismiss (Doc # 9) is GRANTED.

IT IS FURTHER ORDERED that Defendants Colonel Kriste Kibbey Etue
and Inspector Scott Marier's Motion to Dismiss (Doc # 10) based on the initial
Complaint is GRANTED.[4]

IT IS FURTHER ORDERED that this action is DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs may file a motion to amend their
Complaint, as to State Defendants only (relative to the recent changes in the law
and in State Defendants' reporting policy), within fourteen days of the entry of this

---

[4] At Plaintiffs' request, the Court held a status conference on February 21, 2017. Plaintiffs
argued that recent changes in State Defendants' reporting policy require that the Court deny the
instant Motions to Dismiss as moot because State Defendants' arguments have allegedly
changed. Plaintiffs further argued that they should be permitted to amend their Complaint as
well as conduct discovery on why and when State Defendants' reporting policy changed.
Plaintiffs acknowledged that County Defendants have not changed their reporting policy. The
Court noted that Plaintiffs have not filed any motions. The Court need not address Plaintiffs'
status conference arguments here; however, the Court will permit Plaintiffs to file a motion to
amend their Complaint, as to State Defendants only, relative to the recent changes in the law and
in State Defendants' reporting policy. Plaintiffs may file a motion to amended their Complaint
within fourteen days of the entry of this Order, *if they believe they can overcome the standing
issues which this Court concludes result in dismissal as discussed above*.

Order—*if Plaintiffs believe they can overcome the standing issues which this Court*

*concludes result in dismissal as discussed above*.


                S/Denise Page Hood
                Denise Page Hood
                Chief Judge, United States District Court

Dated:  February 23, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 23, 2017, by electronic and/or ordinary mail.

                S/LaShawn R. Saulsberry
                Case Manager